UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TRAVIS DELSHAWN SHAW,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.

_____/

Case No. 1:25-cv-276

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Rewerts. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Ottenwess, Fears, and Miller: any claims that Plaintiff purports to bring on behalf of others and Plaintiff's official capacity claims. Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical need against Defendants Ottenwess, Fears, and Miller in their personal capacities remain in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following DRF personnel: Warden Randee Rewerts; Prison Counselor Unknown Miller; Sergeant Unknown Fears; and Correctional Officer Unknown Ottenwess. Plaintiff sues each Defendant in his or her official and personal capacities.

Plaintiff alleges that, on June 11, 2024, between 4:30 p.m. and 5:30 p.m., Defendant Ottenwess shook down Plaintiff's cell. (Compl., ECF No. 1, PageID.6.) Defendant Ottenwess instructed Plaintiff and his cellmate to remain in the dayroom while the search was ongoing. (*Id.*) Defendant Ottenwess located contraband—drugs—in the cell. (*Id.*)

Plaintiff's cellmate promptly informed unit corrections officers, including Defendant Ottenwess, that the drugs belonged to Plaintiff's cellmate. (*Id.*) Nonetheless, Defendant Ottenwess accused Plaintiff of being a junkie. Defendant Ottenwess advised Plaintiff that Ottenwess intended to write a misconduct report on Plaintiff, confine Plaintiff to a cell, and take all of Plaintiff's property. (*Id.*) Plaintiff asked Defendant Ottenwess to permit Plaintiff to keep his hearing aid batteries and his medication. (*Id.*) Defendant Ottenwess agreed to leave the hearing aid batteries, but not the medication because he posited that Plaintiff would just abuse the medication. (*Id.*) Plaintiff advised Defendant Ottenwess that the medication was not of the type that could be abused, that the medication was prescribed for Plaintiff's health problems, and that, without the medication, Plaintiff would become very sick and die. (*Id.*)

Plaintiff was escorted to segregation. (*Id.*) He was strip-searched and drug-tested. (*Id.*) He did not possess any drugs, and there were no drugs in Plaintiff's system. (*Id.*) Despite those results, Defendant Ottenwess wrote the misconduct report. (*Id.*) Later, Defendant Ottenwess packed up Plaintiff's property, taking Plaintiff's medication in the process. (*Id.*)

4

Plaintiff visited the unit officer's station and asked Defendant Ottenwess to return Plaintiff's medication. (*Id.*) Defendant Ottenwess refused. (*Id.*)

Later, Plaintiff was called to the officers' station by Defendant Fears to be reviewed on the misconduct report written by Defendant Ottenwess. (*Id.*) Plaintiff advised Defendant Fears that Defendant Ottenwess took Plaintiff's prescription medication and that he "really need[ed] it back." (*Id.*) Plaintiff told Defendant Fears that if Plaintiff failed to take his medication every day, he could get sick. (*Id.*) Defendant Fears informed Plaintiff that if Defendant Ottenwess took Plaintiff's medication, Plaintiff must have done something to deserve it. (*Id.*) Defendant Fears refused to return Plaintiff's medication. (*Id.*)

The next day, Plaintiff sent an urgent healthcare kite to "medical" letting them know that his medication had been taken from him and that he needed a refill. (*Id.*) Plaintiff similarly informed the first shift officers. (*Id.*) The officers said they would look into it but never got back to Plaintiff. (*Id.*)

On June 13, 2024, Plaintiff awoke with a headache that, over the course of the day, progressed into an excruciating migraine. (*Id.*) The following day, Plaintiff's headache continued, and he began to experience chest pains. (*Id.*) Plaintiff visited Defendant Miller's office seeking help to get his medication. (*Id.*) Plaintiff told Defendant Miller that Defendant Ottenwess had taken Plaintiff's medication for no reason and that, as a result, Plaintiff was in pain. (*Id.*) Defendant Miller accused Plaintiff of being a liar because Defendant Ottenwess had informed Defendant Miller that Plaintiff had been "high." (*Id.*) In light of that information, Defendant Miller declined to help Plaintiff recover his medication. (*Id.*)

Plaintiff's condition deteriorated. On June 15, 2024, he advised unit officers of his symptoms and asked them to call medical. (*Id.*) The officers advised Plaintiff that, because it was

the weekend, no nurse was available. (*Id.*) On June 16, 2024, Plaintiff lay in bed all day because he thought he might pass out if he stood up. (*Id.*) On June 17, 2024, Plaintiff's symptoms worsened. (*Id.*) Plaintiff wrote a kite to the non-party Healthcare Unit Manager. (*Id.*) Plaintiff did not receive a response. (*Id.*) The intensity of Plaintiff's symptoms increased again on June 18, 2024. (*Id.*)

On June 19, 2024, Plaintiff sent a kite to Defendant Rewerts's office explaining the situation. (*Id.*, PageID.7.) Plaintiff continued to suffer on June 19 and 20, 2024. (*Id.*)

On June 21, 2024, Plaintiff asked the first shift unit officers to retrieve his property bag or at least his medication. (*Id.*) They refused. (*Id.*) Plaintiff asked the same of the second shift unit officers. (*Id.*) Non-party Officer Palmer advised Plaintiff that she called "property" and was told they were not giving any more property that day. (*Id.*)

Eventually, on June 21, 2024, Plaintiff fell and passed out. (*Id.*) He was "wheelchaired" to medical between 8:30 p.m. and 9:30 p.m. (*Id.*) A non-party nurse advised Plaintiff that his blood pressure was high and asked if he had been taking his medication. (*Id.*) Plaintiff told the nurse it had been taken from him, packed with his property, and locked up. (*Id.*) Plaintiff told the nurse that he had kited medical about the issue, but he received no response. (*Id.*)

The nurse advised the non-party corrections officer in medical that Plaintiff needed his medication. (*Id.*) The officer explained to the nurse that Plaintiff's medication was in the property room and that the key-holder was not available. (*Id.*) The nurse checked Plaintiff's blood pressure again, determined that it had improved, and sent Plaintiff back to his cell. (*Id.*)

Shortly after 9:30 p.m., non-party Unit Officer Woodward called Plaintiff to the officers' station. (*Id.*) Officer Woodward had Plaintiff's green property bag and instructed Plaintiff to pull out the medication. (*Id.*) Plaintiff did so. (*Id.*) Presumably, from that point forward, Plaintiff was able to take his medication.

Plaintiff wrote a grievance regarding this issue on June 21, 2024. (*Id.*, PageID.8.) The grievance was rejected at all three levels because it contained "Multiple Issues." (*Id.*)

Plaintiff claims "that the [D]efendants violated the 8th [A]mendment by being deliberately indifferent to [Plaintiff's] serious medical needs." (*Id.*, PageID.5.) He seeks punitive damages in the amount of $1,000,000.00 and compensatory damages in an unstated amount. (*Id.*, PageID.4.) Additionally, Plaintiff "seeks injunctive relief in the form of court orders for the MDOC to ensure such privations do not re-occur for the Plaintiff and others similarly situated in the future." (*Id.*)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

7

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff seeks relief for violation of his Eighth Amendment rights.

### A.     Official Capacity Claims

Plaintiff sues the Defendants in their respective official and personal capacities. (Compl., ECF No. 1, PageID.5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as injunctive relief. (Compl., ECF No. 1, PageID.4) However, as noted above, the MDOC is not a "person" who may be sued under Section 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). And a court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

Here, Plaintiff's allegations relate solely to past harm, not future risk of harm. Plaintiff alleges no facts that suggest that Defendants' actions with regard to Plaintiff's medication are ongoing or were caused by an official policy or practice. Thus, Plaintiff cannot maintain his claims for injunctive relief against these Defendants under the *Ex parte Young* exception.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities on which relief may be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Claims for Relief on Behalf of Similarly Situated Prisoners

Plaintiff indicates that he seeks injunctive relief on his own behalf as well as on behalf of "others similarly situated in the future." (Compl., ECF No. 1, PageID.4.) Plaintiff, however, who is proceeding *pro se,* cannot represent the interests of others. It is well established that *pro se* litigants lack standing to represent the interests of others. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. State of Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. *See* 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States the parties may plead and conduct **their own cases** personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id*. (emphasis added). The federal courts long have held that Section 1654 preserves a party's right to proceed *pro se*, but only with respect to their own claims. Only a licensed attorney may represent other people. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Accordingly, in attempting to proceed *pro se* on behalf of others, Plaintiff has failed to state a claim on which relief may be granted.

10

### C. Defendant Heidi Washington

Plaintiff names MDOC Director Heidi Washington as a Defendant, but he does not even mention Defendant Washington's name in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And, a claimed

11

constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Further, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or other document sent to them. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Here, Plaintiff fails to allege any facts to show that Defendant Washington engaged in any active unconstitutional conduct. Moreover, to the extent that Plaintiff seeks to hold Defendant Washington liable due to her supervisory position, government officials, such as Defendant Washington, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)).

Here, the factual allegations in the complaint are insufficient to show that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or

knowingly acquiesced in the conduct. And any conclusory allegations of supervisory responsibility are insufficient to show that Defendant Washington was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Therefore, for these reasons, Plaintiff fails to state any claim upon which relief may be granted against Defendant Washington. Accordingly, Defendant Washington and Plaintiff's claims against her will be dismissed for failure to state a claim on which relief may be granted.

### D. Eighth Amendment Claims for Deliberate Indifference to a Serious Medical Need

Plaintiff claims that Defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs—specifically by deliberately taking or withholding his prescribed medication. (Compl., ECF No. 1, PageID.5.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the

13

seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

### 1. Objective Component

Plaintiff never reveals the underlying medical condition that is treated by his prescription medication. Instead, he focuses on the symptoms he suffers when he is denied the medication. At

14

this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's prescribed need for medication, accompanied by Plaintiff's description of his worsening symptoms—severe headaches, chest pains, dizziness, and high blood pressure—adequately allege the objective component of the relevant two-prong test.

### 2. Subjective Component

#### a. Defendants Ottenwess and Fears

Plaintiff describes his serious medical need by identifying the symptoms that follow the deprivation of his medication rather than stating the medical condition that his medication is intended to treat. With regard to Defendants Ottenwess and Fears, who are only mentioned as being present during the first few hours of the deprivation, that leaves little more than Plaintiff's description of the expected consequences of deprivation to show the existence of a substantial risk of serious harm. There are no facts alleged to suggest that Defendants Ottenwess or Fears observed Plaintiff suffering from the symptoms he anticipated.

Just because a prisoner "says so" does not necessarily provide a sufficient foundation for concluding that a prison official is aware of a substantial risk of serious harm. *See, e.g., Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *3 (6th Cir. Nov. 8, 2024) (noting that "a nurse doesn't know that an inmate is actually taking drugs just because he says so"). However, Plaintiff clearly alleges that the medication at issue was prescribed for him. Plaintiff's statements regarding the severe symptoms that might follow deprivation in combination with the fact that a medical professional prescribed the medication,[2] support an inference that Defendants Ottenwess and Fears

---

[2] The Sixth Circuit has held that non-medical prison or jail staff may rely on the assessments made by medical staff. *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009). "Where . . . an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice." *McGaw v. Sevier County*, 715 F. App'x 495, 498–99 (6th Cir. 2017). If non-medical prison officials are permitted to defer to a medical

15

were aware of a substantial risk of serious harm. Moreover, their stated disregard for the anticipated symptoms supports an inference that they consciously disregarded that risk. Therefore, at this stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Ottenwess and Fears.

### b.  Defendant Miller

Defendant Miller saw Plaintiff three days after Plaintiff's medication was taken from him. Plaintiff alleges that he was suffering severe symptoms at that time. Because Defendant Miller saw Plaintiff suffering the symptoms and was aware that Plaintiff had been deprived of a prescription medication, Plaintiff's allegations support an inference that Defendant Miller was aware of a substantial risk of serious harm as well. Moreover, Defendant Miller's response to Plaintiff's request supports an inference that Defendant Miller consciously disregarded the risk. Therefore, at this stage of the proceedings, the Court cannot dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Defendant Miller.

### c.  Defendant Rewerts

Plaintiff does not allege any facts to suggest that Defendant Rewerts was aware of Plaintiff's symptoms. Plaintiff alleges only that he sent a kite to the warden's office explaining that his medication had been taken, and that he was not getting help to get it back. (Compl., ECF No. 1, PageID.7.) Plaintiff alleges no facts regarding Defendant Rewerts's response, if any. Essentially, Plaintiff states only that he wrote to Defendant Rewerts about Plaintiff's medication problem.

---

professional's judgment to avoid liability for deliberate indifference to a serious medical need, it would seem inconsistent to permit a non-medical official to knowingly ignore the judgment of a medical professional without consequence. *See, e.g., Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016) (explaining that "[a] jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist").

As explained with regard to Defendant Washington, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Section 1983 liability may not be imposed simply because a supervisor failed to act based upon information contained in a grievance or other document sent to them. *Shehee*, 199 F.3d at 300.

Here, Plaintiff fails to allege any facts to show that Defendant Rewerts engaged in any active unconstitutional conduct. Moreover, to the extent that Plaintiff seeks to hold Defendant Rewerts liable due to his supervisory position, for the same reasons discussed in detail above, Defendant Rewerts may not be held liable for the unconstitutional conduct of his subordinates or based upon the mere failure to act.

Plaintiff's allegations are insufficient to show that Defendant Rewerts encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Any conclusory allegations of supervisory responsibility are insufficient to show that Defendant Rewerts was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Therefore, Plaintiff has failed to state a claim against Defendant Rewerts on which relief may be granted.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Washington and Rewerts will be dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, any claims that Plaintiff purports to bring on behalf of others and Plaintiff's official capacity claims against Defendants Ottenwess, Fears, and Miller. Plaintiff's Eighth Amendment

claims for deliberate indifference to his serious medical need against Defendants Ottenwess, Fears, and Miller in their personal capacities remain in the case.

    An order consistent with this opinion will be entered.


Dated:  May 1, 2025                                      /s/ Sally J. Berens
                                                                 SALLY J. BERENS
                                                                 United States Magistrate Judge